IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


TAMARA L. DIBARTOLA,

      Plaintiff,

          v.

THE UNITED STATES STEEL AND
CARNEGIE PENSION FUND *a
Pennsylvania corporation*,

      Defendant.

12cv1812
**ELECTRONICALLY FILED**


## MEMORANDUM OPINION

Before the Court are the parties' cross-motions for summary judgment (doc. nos. 17 and 21). Plaintiff brought this Employee Retirement Income Security Act (ERISA) action seeking long-term (formerly titled "supplemental disability benefits" (SDB)) under an insurance program provided by her employer, the United States Steel and Carnegie Pension Fund (USSCPF), which is the Plan Administrator of various health and welfare benefit programs sponsored by United States Steel Corporation (USS).[1] Plaintiff contends that the USSCPF "bungled the handling" of her claim and abused its deferential discretionary standard under ERISA. Defendant, on the other hand, argues that under the same deferential standard of review, its decision was not arbitrary or capricious and that substantial evidence, in the form of two opinions, from two impartial doctors, supports its decision to deny benefits.

For the reasons set forth in greater detail below, the Court will grant Defendant's Motion for Summary Judgment (doc. no. 19) and will deny Plaintiff's Motion for Summary Judgment (doc. no. 21).

---

[1] The Court will refer to the Plan and the USSSCPF interchangeably throughout this Memorandum Opinion.

## I. FACTUAL BACKGROUND

The following relevant facts are not contested:

Plaintiff began to work for Defendant USSCPF on May 20, 1996, and was promoted no fewer than five (5) times during the 15 year period of employment.  Most recently, as of March 12, 2010, she was a business partner performance specialist.  Doc. No. 26 at ¶ 2.  From the time when Plaintiff stopped working, and for a period of 20 weeks thereafter, she received salary continuation from Defendant.  Plaintiff's position primarily involved sedentary work in an office environment, with infrequent travel to participate in benefit presentations for employees and retirees of USS.  Doc. No. 30 at ¶ 2.

As stated, on March 12, 2010, Plaintiff ceased to perform her job duties on the basis of medical diagnoses of Chronic Fatigue Syndrome and Fibromyalgia by her treating physician (PCP), Daniel J. Crable, M.D.  As a result of her health problems, Plaintiff filed for Social Security Disability (SSD) benefits, which she was awarded on October 26, 2010, with an onset date of September 2010, at the rate of $2,153.00 per month.  Doc. No. 26 at ¶ 3.

Plaintiff also applied for Supplemental Disability Benefits (SDB) under the Supplemental Disability Group Insurance Program for Eligible Non-Union Employees of United States Steel Corporation and Subsidiary Companies (the Program).

The Program is provided through the USS Corporation Plan for Employee Insurance Benefits (Revision of 1950), (the Plan), a welfare benefit plan subject to ERISA, 29 U.S.C. § 1001, et seq.  The Program provides that USSCPF shall administer this Program and shall decide all questions arising out of and relating to the administration of this Program, with the decisions of the USSCPF being final and conclusive as to all questions of interpretation and application of

the Program and as to all other matters arising in the administration thereof. Doc. No. 30 at ¶ 5-6. The Plan defines disability and duration of benefits under Section 4.6. Doc. No. 26 at ¶ 8.

On the second and final level of appeal, however, Section 4.15 of the Program provides that the determination of whether a participant is disabled shall be submitted to an impartial physician selected by the participant's physician and the USS Medical Director, and, after examination of the participant and consultation with the other two physicians, the opinion of the impartial physician shall decide the matter. Id. at ¶ 7.

The Program provides 18 months of SDB to a participant who is unable to perform the duties of his or her regular job as determined by the USS Medical Director, on the basis of injury or illness. Upon the conclusion of the 18 month period, benefits will continue if the participant is unable to engage in any gainful employ from which he or she is fitted by education, training, and experience, also as determined by the USS Medical Director. Id. at ¶ 19.

The First Notice of Claim under the Family Medical Leave Act (FMLA) was completed by Plaintiff and Dr. Crable, on March 30, 2010. Doc. No. 26 at ¶ 9.

On May 24, 2010, Plaintiff again visited Dr. Crable, who diagnosed Plaintiff as having Fibromyalgia and Chronic Fatigue. At that time, however, Dr. Crable noted on a form that he submitted for Plaintiff to obtain SDB that he could not determine whether Plaintiff was totally disabled. Id. at. ¶ 10-12. However, at that visit, Dr. Crable's objective findings were "normal." Id. at ¶ 9.

Also, on May 24, 2010, Plaintiff notified Stephanie Tinney, a Registered Nurse in USS' Medical Department that she had an appointment with her physician and was uncertain as to when she would return to work. Doc. No. 30 at ¶ 13.

Tinney communicated with Plaintiff on approximately six occasions between May 28, 2010 and December 9, 2010, once while Plaintiff was on vacation, for Plaintiff to authorize Drs. Joseph Ferris and Teresa Silvaggio of the USS Medical Department to both receive medical records from Dr. Crable, and to communicate with Dr. Crable, and for Plaintiff to submit updated SDB forms. Doc. No. 30 at ¶ 14.

According to the affidavit of Dr. Ferris of the USS Medical Department, he made four unsuccessful attempts to communicate with Dr. Crable about Plaintiff's condition between June 23, 2010 and July 28, 2010. Doc. No. 30 at ¶ 18.

On June 28, 2010, an MRI was performed on Plaintiff's brain due to complaints of memory loss, and it was negative for multiple sclerosis. Doc. No. 18 at ¶16. On July 6, 2010, Plaintiff submitted another SDB form, but Dr. Crable again stated that he could not determine whether Plaintiff was totally disabled. Doc. No. 30 at ¶ 17.

On August 17, 2010, October 12, 2010, and January 25, 2011, Plaintiff submitted further SDB forms, and on January 25, 2011, Plaintiff submitted a third Statement of Claim, all of which were from her treating physician, Dr. Crable. Id. at. ¶ 9-12. Doc. No. 26. at ¶ 10-14. Dr. Crable stated that Plaintiff is totally disabled, but noted no limitation on sitting. Doc. No. 30 at ¶ 17.

On November 17, 2010, Dr. Silvaggio personally interviewed and examined Plaintiff, and then wrote a report detailing her findings from the exam. Dr. Silvaggio concluded the report by noting that:

> I will review records submitted by [Plaintiff's] primary care physician and also conduct a conversation with her primary care physician regarding this employee's status. The employee was agreeable to this and said she would sign all releases necessary for me to have a dialogue with her physician. We will obtain medical records from Dr. Crable and I will review. I will contact Dr. Crable by phone after I have reviewed the records to discuss Ms. DiBartola's situation.

Doc. No. 30 at ¶¶ 20-21.

According to the affidavit of Dr. Silvaggio, the USS Medical Director, after two unsuccessful attempts to contact Dr. Crable, on February 4, 2011, the two finally spoke and discussed Plaintiff's sedentary position and Dr. Crable's finding that Plaintiff was not limited in sitting. Doc. No. 30 at ¶ 22. Dr. Crable also told Dr. Silvaggio that he may send Plaintiff for neurocognitive testing in an effort to quantify objectively some of her concentration and focus complaints. Doc. No. 30 at ¶ 24; Doc. No. 26. ¶ 16. Dr. Silvaggio noted on February 4, 2011, that "at this time, I will await those results (neurocognitive testing) before a disability determination is made given the fact that there is not sufficient medical documentation convincing of an ongoing disability of Ms. DiBartolo from her job." Doc. No. 30 at ¶ 24; Doc. No. 26 at ¶ 17.

Dr. Crable stated to Dr. Silvaggio that he would discuss the plan with Plaintiff and projected receiving a neurocognitive test result within four weeks. Doc. No. 30 at ¶ 25. Consistent with the plan, on February 23, 2011, Plaintiff was evaluated by Psychologist Dr. Evan Kogan, who diagnosed Plaintiff with cognitive disorder and adjustment disorder with depressed mood. Dr. Silvaggio and Dr. Kogan discussed the test results on March 14, and 15, 2011.

On March 17, 2011, Dr. Silvaggio recommended via email to Donna Stewart, Manager Benefit Program Administration, that Plaintiff's SDB claim be denied. Dr. Silvaggio stated as follows: "[B]ased on my evaluation of Tamara DiBartola on 11/17/10, review of the available medical records, discussion with Dr. Crable and Dr. Kogan, it is my medical opinion that Ms. DiBartola is not disabled from performing her job." Doc. No. 30 at ¶ 29.

On March 29, 2011, the USSCPF responded by letter and issued a denial. Id. at ¶ 14. While Plaintiff emphasizes that the denial came 309 days from the date of the initial application,

over 212 from the date of the first submitted Statement of Claim, and over 63 days from the last submitted Statement of Claim, Defendant counters that the delays were at least partly attributable to Plaintiff.

The letter by the USSCPF, dated March 29, 2011, to Plaintiff, stated in part:

> The SDB claim forms completed by Dr. Crable on October 10, 2010 and January 25, 2011 both indicated that you are totally disabled, but Dr. Crable did not place any limitation on your ability to sit. Because your job is sedentary in nature, your duties are within the limitations outlined by Dr. Crable.
> Additionally, although the initial screening tests performed by Dr. Kogan on February 23, 2011 indicated that there may be some impairment in your cognitive ability, he did not indicate that you are disabled. Instead, Dr. Kogan recommended further therapy and neurocognitive testing to confirm your diagnosis. Because your screening tests are based to a certain extent on subjective reporting, the additional testing recommended by Dr. Kogan is required in order to determine whether you are disabled.

Doc. No. 30 at ¶ 31.

By letter dated April 11, 2011, Plaintiff filed a timely administrative appeal to the Vice President of the USSCPF, alleging that the USSCPF: (1) failed to completely assess her job responsibilities; (2) failed to consider Dr. Crable's diagnosis in its entirety; and (3) misrepresented Dr. Kogan's assessment. Doc. No. 30 at ¶ 32.

Following this submission, Plaintiff submitted four additional SDB claim forms, as requested by the USS Medical Department, for a total of five (5) SDB claim forms. Doc. No. 26 at ¶ 20.

On April 26, 2011, Plaintiff sent a supplemental letter to the Director of the Health and Welfare Plans enclosing a copy of the medical evaluation by her rheumatologist, Dr. Mathur, and another letter from Dr. Crable. Doc. No. 26 at ¶ 21.

Dr. Mathur's impressions included (1) fibromyalgia with inability to cope with symptoms, (2) incapacitating fatigue, (3) history of chronic headaches, (4) history of

gastroparesis and Barrett's esophagus, and history of irritable bowel syndrome, (5) hypothyroidism, and (6) possible depression. Doc No. 26 at ¶ 23.

On May 24, 2011, a certified letter to Plaintiff was sent by David Repko, Director of the Health and Welfare Plans. In the letter, it stated that additional time was needed to process Plaintiff's claim, in order to consult with a healthcare professional in reviewing Plaintiff's claim. Doc. No. 26 at ¶ 25.

The terms of the Program require that when an appeal is filed, the USSCPF must consult with a healthcare professional trained and experienced in the field of medicine on which the claim is based. The healthcare professional engaged for the review must be an individual who was neither consulted on the original determination, nor the subordinate thereof. Doc. No. 30 at ¶¶ 33-34. In light of this requirement, the USSCPF extended the time to decide Plaintiff's appeal. Doc. No. 18 at ¶ 35.

On May 27, 2011, Dr. Silvaggio asked Dr. Angelo Constantino, who is Board Certified in Occupational Medicine and Internal Medicine and is a Clinical Professor at both Temple and University of Pittsburgh Schools of Medicine, to review Plaintiff's claim. Doc. No. 30 at ¶¶ 36-37. Dr. Constantino reviewed Plaintiff's medical records, supplemental disability claim forms, job descriptions, and the initial denial letter dated March 29, 2011. After reviewing said documents, on June 14, 2011, Dr. Constantino advised Dr. Silvaggio of his opinion that Plaintiff is not disabled. Dr. Constantino discussed Plaintiff's recent cognitive test results, and concluded as follows:

> She reported memory and concentration problems over several years. Her Wechsler Memory Scale score in the 2nd percentile and Comprehensive Trail-Making Test score in the 4th percentile are extremely low, typically seen in patients with advanced dementia. Since this type of cognitive testing is effort dependent, the tester must subjectively determine whether full effort was applied to make the test results valid. When results are this disproportionate to

the observed or expected, the testing is generally invalid due to lack of effort. Of course, similar to the subjective reports of pain, one can argue that their attention, concentration, and cognitive flexibility are equally impaired. Notably however, the reported cognitive difficulties are magnified and disproportionate to the typical cognitive test findings in Fibromyalgia patients and to the writing skills demonstrated by the claimant within the claimant's appeal letters. The medical evaluations as documented and course over time do not suggest any underlying dementia to account for such extremely low cognitive testing.

Doc. No. 30 at ¶ 41.

As discussed above, in her appeal letter of April 11, 2011, Plaintiff raised numerous issues. In the appeal denial letter, the USSCPF addressed each of her issues as follows:

> In general you are asked to travel only a few times a year to participate in benefit presentations during the annual open enrollment period and in other special circumstances, such as the 2009 Voluntary Early Retirement Program and the Lone Star acquisition in 2007. Therefore, traveling is not required for your position as there are only a few presentations each year and they can be performed by other members of the benefits team.
>
> ***
>
> Additionally, it does not appear that your condition should prevent you from attending meetings in the Pittsburgh office. When describing your daily routine to Dr. Silvaggio during your medical examination on November 17, 2010, you indicated that you walk approximately one mile around your house in thirty (30) minutes every morning and that you perform light household chores. Also, on the SDB claim form signed by Dr. Crable on January 25, 2011, he indicated that you could carry up to 15 pounds for up to 20% of the work day. Therefore, it appears that you should be able to attend the meetings in the Pittsburgh office and carry your own belongings to those meetings.

Doc. No. 30 at ¶¶ 44-45.

Addressing Plaintiff's assertion that Dr. Crable's diagnosis was not properly considered, especially regarding her limitations on finger dexterity, repetitive movement and concentrated visual attention, the USSCPF responded:

> [T]hese limitations do not mean that you are unable to work. Again, in your examination with Dr. Silvaggio on November 17, 2010, you indicated

that you spend part of your afternoons reading and writing. These are the same activities that you would be performing at work. However, at work you would also be interacting with other people throughout the day and would be required to attend meetings. Importantly, you are not continuously doing any one activity over and over at work such that it would necessarily violate Dr. Crable's limitations.

Doc. No. 30 at ¶ 46.

As to Plaintiff's contention that the USSCF misrepresented Dr. Kogan's assessment of her, the USSCPF clarified its understanding of Dr. Kogan's findings and reiterated the position stated in its initial denial letter that additional testing recommended by Dr. Kogan would be required to determine whether she is disabled due to the subjective nature of the tests.

The USSCPF also questioned the validity of the cognitive tests. It noted in part:

Dr. Constantino concluded in his report that "the reported cognitive difficulties are magnified and disproportionate to the typical cognitive test findings in Fibromyalgia patents and to the writing skills demonstrated by the claimant within the claimant's appeal letters." Dr. Kogan of course did not have the benefits of the appeal letter when evaluating your abilities. There also appears to be inconsistencies in the test results. Specifically, you scored in the normal range in the BNCE subtests measuring abstract/conceptual thinking, ability to process incomplete (visual) information, working memory, naming ability, and memory for commonly known information and orientation, but you scored in the Extremely Low range (1st and 2nd percentile) in the Working Memory, General Memory, and Immediate Memory tests in the WMS-III. Therefore, because (i) your test results are magnified and disproportionate to those expected in fibromyalgia patients and to you demonstrated writing skills; (ii) the inconsistencies in the test results measuring memory, and (iii) the subjective nature of the tests, it is not clear that the results are valid.

Doc. No. 30 at ¶ 49.

Finally, in the letter, the USSCPF noted that Plaintiff's failure to follow the recommendation of Dr. Kogan and Dr. Mather to have a psychiatric consultation and to participate in psychotherapy, also raised questions to the validity of the claim. Doc. No. 18 at ¶ 50.

Nonetheless, on October 10, 2011, Plaintiff, having been unsuccessful in her first appeal, filed a second level appeal, and added medical records totaling approximately 441 pages from over 10 different doctors in varying medical specialties. Doc. No. 30 at ¶ 51.

Section 4.15 of the Program, requires that the second level of review be conducted by an impartial physician selected by the participant's physician and the USSCPF Medical Director. The opinion of the impartial physician shall decide the matter. Doc. No. 30 at ¶ 52.

By letter dated October 21, 2011, the USSCPF informed Plaintiff of its recommendation for Dr. Donald J. McGraw to perform the review. Dr. McGraw is an Associate Professor of Occupational Medicine with the University of Pittsburgh School of Medicine. Dr. McGraw had never reviewed claims under the Program, nor had he been retained by the USSCPF in any other capacity. Plaintiff was asked to consult with her numerous treating physicians about the recommendation to use Dr. McGraw and to advise the USSCPF of any objections thereto.

Plaintiff, however, never provided any notice of an objection, and therefore, the USSCPF subsequently forwarded a copy of Plaintiff's claim file and medical documentation to Dr. McGraw for his review. Doc. No. 30 at ¶¶ 53-58.

After conducting a medical record review, and performing an independent disability evaluation of Plaintiff (on November 15, 2011), and speaking with Dr. Crable, Dr. McGraw opined that Plaintiff is not disabled under the terms of the Program. Doc. No. 30 at ¶¶ 59-60.

Dr. McGraw stated, in finding Plaintiff not disabled, the following:

> Ms. DiBartola was alert, extremely articulate, and did not demonstrate any signs suggestive of cognitive impairment. Even on physical examination, there were only minimal complaints of tenderness that might typically be associated with a diagnosis of fibromyalgia. Her wrists and her neck were the only areas of which she complained. Otherwise, palpation and examination were entirely normal, eliciting no complaints of pain or discomfort. Ms. DiBartola and her mother [who was present during the exam] demonstrated extreme defensiveness when psychological or psychiatric counseling were mentioned. Ms. DiBartola reiterated that her family represented a sufficient support system to address her needs in that regard.

Doc. No. 30 at ¶ 62.

Dr. McGraw also noted that he spoke with Dr. Crable, who expressed some frustration in knowing what to offer Plaintiff, as he stated:

> [H]e has referred her to every imaginable specialist, and 'fibromyalgia' is all they are able to come up with. He has tried physical therapy and medications and acknowledged that she and her family have fiercely resisted any type of psychological or psychiatric counseling or help.

Doc. No. 30 at ¶ 64.

Plaintiff brought the current civil action on December 12, 2012 (doc. no. 1), and after failing to resolve this case at mediation (doc. no. 16), the instant cross-motions for summary judgment followed (doc. nos. 17 and 21).

## II. STANDARD OF REVIEW

Summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2).

When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must

– by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party. Fed. R. Civ. P. 56(e)(2).

To demonstrate entitlement to summary judgment, defendant, as the moving party, is not required to refute the essential elements of the plaintiff's cause of action. Defendant needs only point out the absence or insufficiency of plaintiff's evidence offered in support of those essential elements. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Once that burden has been met, plaintiff must identify affirmative evidence of record that supports each essential element of his cause of action. If plaintiff fails to provide such evidence, then he is not entitled to a trial, and defendants are entitled to summary judgment as a matter of law. *Id.*

In summary, the inquiry under a Rule 56 motion is whether the evidence of record presents a genuine dispute over material facts so as to require submission of the matter to a jury for resolution of that factual dispute or whether the evidence is so one-sided that the movant must prevail as a matter of law. It is on this standard that the Court has reviewed the parties respective motions and responses thereto.

## III. DISCUSSION

### A. Scope of Review in ERISA Matters

For actions brought under 29 U.S.C. § 1132(a)(1)(B),[2] such as the matter presently before this Court, the standard of review a trial court must apply was established in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989). In *Firestone*, the United States Supreme Court held

---

[2] Plaintiff further brings this action under the equitable provision of 29 U.S.C § 1132(a)(3)(B)(ii) (not section 1132(3)(b)(2) as stated). In her prayer for relief, she seeks a remand for the Plan to implement a proper review.

that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id*. at 115. When the administrator has discretionary authority to determine eligibility for benefits, the decision must be reviewed under an arbitrary and capricious standard. *Id*.

In *Saltzman v. Independence Blue Cross*, 384 F. App'x 107 (3d Cir. 2010), the United States Court of Appeals for the Third Circuit reiterated, that "[u]nder the arbitrary and capricious standard, 'the district court may overturn a decision of the plan administrator only if it is without reason, unsupported by the evidence, or erroneous as a matter of law.'" *Id*. at 109, quoting *Mitchell v. Eastman Kodak Co*., 113 F.3d 433, 439 (3d Cir.1997).

In *Doroshow v. Hartford Life and Acc. Ins. Co*., 574 F.3d 230, 234 (3d Cir. 2009), the United States Court of Appeals for the Third Circuit noted that the scope of this review is narrow, and the Court is not free to substitute its own judgment for that of the defendant in determining eligibility for plan benefits." See also *Salzman* at 114 ("[T]his review is deferential to the plan administrator, [thus] the district court must not substitute its own judgment for the judgment of the administrator.").

The Court of Appeals for the Third Circuit has also held that when deciding whether an administrator's determination is without reason, unsupported by the evidence, or erroneous as a matter of law, it will apply the following rules of construction of contracts to ERISA plans: the plan must be considered as a whole; straightforward, unambiguous language should be given its natural meaning; and, if a specific provision found in the plan conflicts with a general provision, the specific provision should control. *Saltzman* at 114, citing *Aramony v. United Way of America*, 254 F.3d 403, 413 (2d Cir. 2001) (quoting Restatement (Second) of Contracts § 203(c))

(applying this rule of construction to interpret terms of an ERISA pension plan); and *Petroleos Mexicanos Refinacion v. M/T King A*, 554 F.3d 99, 113 (3d Cir. 2009) ("[T]he more specific term should usually be held to prevail over the more general term." 5 Corbin on Contracts § 24.23 (2007)).

As noted by the Court of Appeals in *Bill Gray Enterprises, Inc. Employee Health and Welfare Plan v. Gourley*, 248 F.3d 206, 218 (3d Cir. 2001) (abrogated on other grounds by *US Airways, Inc. v. McCutchen*, 663 F.3d 671 (3d. Cir. 2011), vacated on other grounds by *US Airways, Inc. v McCutchen*, -- U.S. --, 133 S.Ct. 1537 (U.S. 2013):

> Whether terms in an ERISA plan document are ambiguous is a question of law. A term is "ambiguous if it is subject to reasonable alternative interpretations." *Taylor v. Cont'l Group Change in Control Severance Pay Plan*, 933 F.2d 1227, 1232 (3d Cir.1991); *Mellon Bank, N.A. v. Aetna Bus. Credit Inc.*, 619 F.2d 1001, 1011 (3d Cir.1980). In determining whether a particular clause in a plan document is ambiguous, courts must first look to the plain language of document. *In Re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 58 F.3d 896, 902 (3d Cir.1995) ("The written terms of the plan documents control...."). If the plain language of the document is clear, courts must not look to other evidence. *In re Unisys Corp. Long-Term Disability Plan ERISA Litig.*, 97 F.3d 710, 715 (3d Cir.1996) (quoting *Mellon Bank*, 619 F.2d at 1013) (" 'Our approach does not authorize a trial judge to demote the written word to a reduced status in contract interpretation. Although extrinsic evidence may be considered under proper circumstances, the parties remain bound by the appropriate objective definition of the words they use to express their intent....' "). But if the plain language leads to two reasonable interpretations, courts may look to extrinsic evidence to resolve any ambiguities in the plan document. However, "it is inappropriate to consider such [extrinsic] evidence when no ambiguity exists." *Epright v. Envtl. Res. Mgmt, Inc. Health and Welfare Plan, ERM*, 81 F.3d 335, 339 (3d Cir. 1996).

> To recapitulate, in reviewing a plan administrator's interpretation of an ERISA plan we must first examine whether the terms of the plan document are ambiguous. See generally *In re Unisys Corp. Long-Term Disability Plan ERISA Litig.*, 97 F.3d at 715-16. If the terms are unambiguous, then any actions taken by the plan administrator inconsistent with the terms of the document are arbitrary. But actions reasonably consistent with unambiguous plan language are not arbitrary. If the reviewing court determines the terms of a plan document are ambiguous, it must take the additional step and analyze whether the plan administrator's interpretation of the document is reasonable. *Spacek v. Maritime Ass'n ILA Pension Plan*, 134 F.3d 283, 292 (5th Cir.1998).

With regard to issues surrounding alleged conflicts of interest, this Court further notes that the Supreme Court in *Firestone* also held that under the arbitrary and capricious standard, "if a benefit plan gives discretion to an administrator or a fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.' " *Firestone*, 489 U.S. at 115.  Accord, *Doroshow*, 574 F.3d at 233.

Expounding upon its decision in *Firestone*, the United States Supreme Court in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008), rejected a conflict of interest review that requires a heightened arbitrary and capricious standard.  In *Glenn*, a participant in a long-term disability insurance plan administered by Metropolitan Life Insurance Company (MetLife) challenged MetLife's determination that she was no longer eligible for benefits because she was not totally disabled.  MetLife both funded the plan and had discretionary authority to determine the validity of an employee's benefits claim.

The Supreme Court in *Glenn* held that the existence of a conflict did not change the standard of review from abuse of discretion[3] to a more searching review.  *Id*. at 310. The Court further held:

> We believe that *Firestone* means what the word "factor" implies, namely, that when judges review the lawfulness of benefit denials, they will often take account of several different considerations of which a conflict of interest is one. This kind of review is no stranger to the judicial system. Not only trust law, but also administrative law, can ask judges to determine lawfulness by taking account of several different, often case-specific, factors, reaching a result by weighing all together. See Restatement § 187, Comment d; cf., e.g., *Citizens to Preserve*

---

[3] In *Estate of Schwing v. The Lilly Health Plan*, 562 F.3d 522, fn. 2 (3d Cir. 2009), the United States Court of Appeals for the Third Circuit, citing *Glenn*, stated "Our prior caselaw referenced an 'arbitrary and capricious' standard of review, while *Glenn* describes the standard as 'abuse of discretion.'  We have recognized that, at least in the ERISA context, these standards of review are practically identical."  Accordingly, this Court will use the arbitrary and capricious standard interchangeably with abuse of discretion.

*Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415-417 (1971) (review of governmental decision for abuse of discretion); *Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951) (review of agency factfinding).

> In such instances, any one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance.

*Id*. Accord, *Doroshow*, 574 F.3d at 234 ("The Court in *Glenn* reiterated its position in *Firestone* that a reviewing court should consider the conflict of interest – but only as one consideration among many.").

## B.    Issues

Plaintiff alleges the following errors amount to an abuse of discretion:  (1) The Plan failed to follow its own clear and unambiguous terms (at Section 4.15) by failing to require Plaintiff's Physician and USS Medical Director/Health Department to select an impartial physician; (2) The Plan imposed a standard of disability different from that which is written in the Plan and required "an insurmountable objective medical standard," thereby negating the fact that Fibromyalgia and Chronic Fatigue Syndromes constitute subjective medical conditions;  (3) The Plan failed to issue a timely denial of Plaintiff's initial SBD claim;  (4) The Plan failed to place any weight on the findings of the Social Security Administration, under "an admitted more restrictive standard of disability than required by the Plan;" and, (5) The Plan abused its discretion by relying on the "flawed medical evaluation of Dr. McGraw."

Defendant counters, and contends to the contrary, that: (1) The language of Section 4.15 does not contain language prohibiting the Plan from initiating the process of selecting an impartial physician through the participant, nor do the actions of the Plan in asking Plaintiff to confer with her treating physicians, amount to arbitrary and capricious actions; (2)  The Plan never denied Plaintiff's claims on the basis of a lack of objective medical evidence, and the

record demonstrates that the Plan, and each of the consulting physicians reviewed all of Plaintiff's subjective evidence, and instead found that despite Plaintiff's subjective claims, the medical evidence demonstrates that she is able to perform her sedentary job; (3) The delay in issuing a denial were at least partly attributable to Plaintiff and that any delay was, at most, a procedural irregularity that does not amount to a conflict of interest and does not include an arbitrary and capricious action that affected the outcome of Plaintiff's claim; and, (4) The Plan's failure to give the Social Security Administration's award of benefits any weight is not violative of the Court of Appeals for the Third Circuit's precedential holding the such decisions are non-binding and do not render the Plan's decision arbitrary and capricious. *Burk v. Broadspire Servs.*, 342 Fed. Appx. 732, 738 (3d Cir. 2009).

**C.     Application - Abuse of Discretion Standard**

Turning to the instant matter, the USSCPF Plan Administrator had discretionary authority to determine eligibility for benefits and interpret terms under the Plan. Accordingly, this Court shall apply the abuse of discretion standard of review. The abuse of discretion standard requires affirmation by this Court unless the USSCPF Administrator's (the Plan's) decision is found to be arbitrary and capricious, meaning "without reason, unsupported by the evidence, or erroneous as a matter of law." This standard defers to the Plan Administrator's decision to deny benefits, and prohibits this Court from substituting its own judgment for the judgment of the Administrator.

The USSCPF did not act arbitrarily or capriciously, but rather had substantial evidence supporting its decision. In order to meet the eligibility requirements for SDB under the Program, Plaintiff had to demonstrate that she was unable to perform the duties of her regular job because

of injury or illness. USSCPF734.[4] If the disability exceeds 18 months, benefits would continue if Plaintiff were able to prove that she was unable to provide that "she was unable to engage in any gainful work for which [she is] reasonably fitted by education, training and experience as determined by the USS Medical Director." As Defendant emphasizes, and this Court agrees, Dr. Crable's conclusions on the issue of Plaintiff's disability were mixed - - he noted on the first two claim forms that he could not determine whether Plaintiff was totally disabled, while later indicating that she was disabled. USSCPF121-28; 142-45; 154; 160. Dr. Crable never found that Plaintiff had any limitations on sitting, and on January 25, 2011, he noted that Plaintiff could carry up to 15 pounds for up to 20% of the work day. *Id.*

However, while Dr. Crable ultimately opined that Plaintiff was disabled, other doctors opined the opposite and recommended that the USSCPF deny Plaintiff's request for benefits. Dr. Silvaggio, the USS Medical Director, examined Plaintiff, reviewed available medical records, and discussed the claim with both Dr. Crable, and Dr. Evan Kogan. USSCPF42-45; 109-11; 128; Silvaggio Affidavit at ¶¶7-8. After properly considering this documentation and after examining Plaintiff, Dr. Silvaggio advised that in her medical opinion, Plaintiff was not disabled from performing her job. As Dr. Silvaggio correctly noted, Plaintiff's job is sedentary in nature, and her job duties appear to fall within the limitations outlined on the SDB form completed by Dr. Crable, who, again, put no limitation on Plaintiff's ability to sit. Dr. Silvaggio also noted that in her discussion with Dr. Kogan, who performed neurocognitive testing on Plaintiff, he did not find her to be disabled and instead noted that Plaintiff return to work would better elucidate her capabilities.

---

[4] On occasion, rather than referencing only an undisputed fact from the concise statements of facts, the Court has referenced the administrative record exclusively (which the Court will refer to as USSCPF and applicable page number). The Court notes that a significant portion of the documents listed are filed under seal however.

**1.    Section 4.15 was not ambiguous and the actions of the USSCPF were reasonably consistent with the language of the Plan.**

Plaintiff alleges that the USSCPF actions in recommending Dr. McGraw for an impartial review failed to comply with Section 4.15 of the Program, which states that the second level of review is to be conducted by an impartial physician selected by the participant's physician and the USS Medical Director.  She asserts that the Plan did not engage her physicians in the selection process, but rather required her to contact her own physicians for this purpose.  She infers that the purpose of this action was nefarious, alleging that the USSCPF  set forth this protocol in hopes that her medical condition would cause her not to object to Dr. McGraw's selection.

There is no evidence, however, that the Plan acted with such an intent, and instead, the record indicates that presumably because Plaintiff had several physicians, the Plan asked her to consult with her physicians about its recommendation of Dr. McGraw, which is reasonable.

As Defendant notes, and this Court agrees, Section 4.15 is silent on how the process of selection by the participant's physician should occur, and it does *not* state that it improper to communicate this information through the participant.  In other words, the mechanism by which the selection should occur is not spelled out in the Plan.  In fact, the USSCPF was sensitive to the fact that Plaintiff saw numerous physicians and therefore gave her the ability to coordinate among them to decide this issue.  This Court finds that the course of action taken by Defendant was quite reasonable, not inconsistent with the language of the Plan, and is the opposite of arbitrary and capricious.  Additionally, the Court recognizes that Plaintiff was obviously knowledgeable on the subject, given her position of employment, and accordingly, the actions of the Plan, therefore, were not unreasonable, given this factor as well.

This Court echoes the conclusion of the United States Court of Appeals for the Third Circuit, in *Bill Gray Enterprise., Inc.*, 248 F.3d at 218, where it stated that actions which are "reasonably consistent with unambiguous plan language are not arbitrary." This Court concludes that the actions of the Plan, in allowing a coordination among Plaintiff's treating physicians in selecting Dr. McGraw was neither unreasonable, given the language of the Plan, nor was it arbitrary, capricious, or, for that matter, nefarious (as Plaintiff suggests).

**2.      The USSCPF did not impose a different standard of disability from the language of the Plan.**

Plaintiff next contends that the USSCPF imposed a standard of disability different from that which is written in the Plan and required "an insurmountable objective medical standard," thereby negating the fact that Fibromyalgia and Chronic Fatigue Syndromes constitute subjective medical conditions.

Although the facts reveal that Dr. McGraw[5] noted that there was no "objective clinical abnormalities," (Doc. No. 27 p. 9) there is absolutely no evidence to support the conclusion that her benefits were denied on the basis thereof. On the contrary, the record evidence demonstrates that the USSCPF, and each of the consulting physicians reviewed all of Plaintiff's subjective evidence, and instead found that despite Plaintiff's subjective claims, the medical evidence demonstrates that she is able to perform her sedentary job. As Defendant emphasizes, the USSCPF relied upon the evaluations and examinations performed by numerous qualified physicians including Drs. Silvaggio, Constantino, and McGraw, each of whom addressed her subjective complaints of pain.

---

[5] In a related argument, Plaintiff also raises the issue that Dr. McGraw conducted a flawed medical evaluation and did not credit her subjective complaints of pain, and that he failed to discuss or refute Plaintiff's chronic fatigue syndrome in his assessment. The Court disagrees, and finds that he supported his medical opinions with substantial evidence of record, and his opinions were reasonable, and well explained. Therefore, the Court finds no evidence that the Plan abused its discretion in relying on his opinions.

The record contains more than a few statements by Plaintiff to the physicians to support her ability to perform her sedentary work: that she can walk approximately one mile for 30 minutes each day, can perform light household chores, is capable of reading and writing and can carry up to 15 pounds for up to 20% of the work day. USSCPF43; 809-10. Also, Dr. Crable noted no limitation on Plaintiff's ability to sit. USSCPF7; 147. Any one of these subjective statements could support the conclusion that she is capable of performing her sedentary work. As for Plaintiff's contention that her mental decline is sufficient to support a finding of disability, as Dr. Constantino noted, Plaintiff's test results were extremely low, typically seen in patients with dementia, and her test results were disportionately low, especially given her demonstrated writing skills in her appeal, and her intellectual capacity as demonstrated orally. Additionally, as Dr. Kogan noted, Plaintiff was unwilling to address her mental health issues through the use of psychotherapy and Dr. Kogan did not find her disabled on the basis of her inability to concentrate.

Simply because Dr. McGraw stated that he was unable to detect any "objective clinical abnormalities," does not equate to a finding of arbitrary and capricious action on the part of the Plan, and the case law cited by Plaintiff (*Mitchell v. Eastman Kodak Co*. 113 F.3d 433 (3d Cir. 1997)), does not further her position. While *Mitchell* stands for the proposition that the act of requiring objective proof of Chronic Fatigue Syndrome and Fibromyalgia is an arbitrary and capricious one, the Court finds that the USSCPF did not so require in this case. Instead, the USSCPF relied on numerous competing conclusions from not one, but three, physicians, who all determined that Plaintiff could perform her sedentary job, after considering Plaintiff's subjective complaints of pain and cognitive dysfunction, and comparing them to objective medical criteria. Therefore, the actions of the Plan are neither arbitrary nor capricious.

**3.   There was no procedural irregularity in the time it took the USSCPF to decide Plaintiff's claim.**

Plaintiff alleges that the amount of time it took the USSCPF to initially or ultimately decide her claim, constituted a procedural irregularity that rose to the level of a conflict of interest.  However, as Defendant notes, and this Court agrees, the delays were partly attributable to Plaintiff, who was contacted several times for her to sign forms authorizing the USS Medical Department to receive medical records and to communicate with Dr. Crable.

If an ERISA Plan fails to comply with the timeframe requirements set forth in 29 C.F.R. § 2560.503-1(f), "a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act . . ." 29 C.F.R. § 2560.503-1(l). "This regulation . . . protects a claimant by insuring that the administrative appeals process does not go on indefinitely." *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 798 (10th Cir. 2010).

If Plaintiff had chosen to proceed prior to the administrative determination denying benefits, and thus had filed suit under 29 U.S.C. § 1132(a), on the basis of the Plan's failure to comply with 29 C.F.R. § 2560.503-1(f), this Court's standard of review, according to sister Courts of Appeals, would be *de novo*.  See, e.g., *LaAsmar*, 605 F.3d at 797; *Demirovic v. Bldg. Serv. 32 B-J Pension Fund*, 467 F.3d 208 (2d Cir. 2006).  However, Plaintiff chose not to file suit after the period of time under § 2560.503-1(f) had arguably expired.  Instead, she chose to await a decision from the Plan.  As the United States Court of Appeals for the Second Circuit explained in *Demirovic*, when a claimant makes the choice to wait for a determination from a

plan instead of filing suit as permitted by section 2560.503-1(l), the Court is required to apply an arbitrary and capricious standard of review. *Demirovic*, 467 F.3d at 212.

Although the United States Court of Appeals for the Third Circuit no longer employs a "sliding scale" approach to an arbitrary and capricious review, *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 n.3 (3d Cir. 2011), "the various factors that [it] has historically evaluated must still be considered on arbitrary and capricious review." *Id.* If the process is flawed in some respect, with some procedural irregularities, the Court is to consider "whether, in this claimant's case, the administrator has given the court reason to doubt its fiduciary neutrality." *Id.* at 845 (internal quotation marks and citation omitted).

Although the process was admittedly a lengthy one, the Court finds that there was nothing that occurred that violated the terms of the Plan or the spirit of the applicable regulations. In fact, rather than denying Plaintiff's claim, based upon the medical reports of Dr. Crable, which would have been well within Dr. Silvaggio's authority, she instead provided Plaintiff with numerous occasions to bolster her claim. Plaintiff was actively involved in the claim process, despite the fact that the USSCPF rendered its decision 309 days after she first submitted her claim.

As to the allegation regarding the USSCPF seeking an extension of time on Plaintiff's second level of appeal, the records demonstrates that Section 13.10 of the Program allows the USSCPF to seek a 45-day extension of time based upon special circumstances as long as the participant is notified of (i) the extension, (ii) the special circumstances requiring the extension, and (iii) the date by which a determination is expected to be made. USSCPF796. A review of the record reveals that the Plan sent Plaintiff a letter on May 24, 2011, advising of the 45-day extension within the initial review period, explained the special circumstances of having to

consult a healthcare professional about her claim, and advising of a decision by June 30, 2011. Therefore, as Defendant emphasizes, and this Court agrees, there was no procedural irregularity at the second level of review. On the record, this Court can find no legitimate reason to doubt the neutrality of the fiduciary.

The Court, therefore, concludes that the Plan acted with appropriate diligence and its actions were not arbitrary and capricious and did not either undermine the neutrality of the process nor did it affect the outcome of her claim.[6]

### 4. There is no evidence that the USSCPF failed to consider the SSA's award of benefits.

Plaintiff argues that the Plan failed to place any weight on the findings of the Social Security Administration. However, as Defendant notes, Plaintiff has offered no evidence that the USSCPF failed to consider the SSA's award of benefits. Rather, on October 26, 2010, the SSA awarded benefits and Plaintiff submitted a copy of the award sometime thereafter. USSCPF 172-173. Further, Dr. Constantino's report indicates that he received and reviewed the report at the first level of appeal. USSCPF37. And, the denial letter of the first appeal states that the USSCPF considered Plaintiff's award of social security.

Plaintiff contends that the USSCPF did not analyze her SSA award in its written denial letters. However, the Honorable Donetta Ambrose has previously stated that a plan administrator "[is] not required to mention specifically each document it considered in reaching

---

[6] As to Plaintiff's argument in equity, the Court declines to exercise its discretion to order remand for equitable purposes. Plaintiff in this case is very sophisticated concerning matters under ERISA – she had worked for Defendant for over fifteen years. She made the tactical decision not to file suit immediately when the time under § 2560.503-1(f) had elapsed hoping that the Plan would still award her benefits. She now seeks a second chance at *de novo* review by appealing to this Court's equitable powers. Doing so would thwart the purpose of the Regulations and ERISA, and thus, the Court declines to do so. As rehearsed, the Court finds that Defendant acted with reasonable diligence and followed the unambiguous terms of the Plan. Keeping in mind that the Court is not free to substitute its own judgment for that of the Defendant in determining eligibility for plan benefits, and seeing no valid reason to grant relief, the Court will decline to exercise its equitable powers in this regard.

its decision." *Houser v. Alcoa, Inc. Long Term Disability Plan*, 2010 WL 5058310, * 13 (W.D. Pa. 2010).

"It is well-established that a Social Security award in itself does not indicate that an administrator's decision was arbitrary and capricious. The legal principles controlling the Social Security analysis differ from those governing the ERISA analysis, and, thus, the Social Security Administration's determination of "disability" is not binding on an ERISA benefit plan." *Id.* at *14.

The United States Court of Appeals for the Third Circuit has unequivocally held that while determinations by the Social Security Administration "may be a relevant factor in an administrator's decision, failure to consider this determination does not render the administrator's decision an abuse of discretion." *Burk v. Broadspire Services, Inc.*, 342 Fed. Appx. 732, 738 (3d Cir. 2009). Accordingly, Plaintiff's argument in this regard, is unpersuasive.

## IV. CONCLUSION

In conclusion, consistent with an exacting standard of review and despite this Court's sympathy for the medical condition of Plaintiff, the Court has evaluated the actions of the USSCPF and concludes that it does not rise to the level of arbitrary and capricious conduct, nor does it constitute an abuse of discretion. Moreover, the Court finds that the actions of Defendant were reasonably consistent with the unambiguous terms of the Plan, and its decisions were supported by substantial evidence of record.

Based on the foregoing law and authority, Plaintiff's Motion for Summary

Judgment (doc. no. 21) will be denied and Defendant's Motion for Summary Judgment (doc. no.

17) will be granted.   An appropriate Order follows.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge

cc:     All Registered ECF Counsel and Parties